1   TRIAL & TECHNOLOGY LAW GROUP
2   A PROFESSIONAL CORPORATION
    ROBERT A. SPANNER SBN 60308
3   3723 HAVEN AVENUE, SUITE 132
    MENLO PARK, CA 94025
4   PHONE: (650) 324-2223/(650) 324-2277
    FAX: (650) 324-0178
5   email - ras@techtriallaw.com
6
    Attorney for Plaintiff
7

FILED

2010 FEB 25  P 4: 11

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
N.D. OF CALIF.

8                  UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10

11   MARK MORRIS,          C10 00808

12                 Plaintiff,           PLAINTIFF'S APPLICATION FOR
     v.                                 TEMPORARY RESTRAINING ORDER
13                                      AND MOTION FOR PRELIMINARY
     WASHINGTON MUTUAL BANK, FA,        INJUNCTION; MEMORANDUM OF
14   et. al.                            POINTS AND AUTHORITIES

15                 Defendants.          FORECLOSURE SALE SCHEDULED FOR
16                                      MARCH 2, 2010

17                                      Date:
18                                      Time:
                                        Dept.
19

20

21

22

23

24

25

26

27

28

1  **PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND**
**MOTION FOR PRELIMINARY INJUNCTION**

2

3    TO:    WASHINGTON MUTUAL BANK, FA, JP MORGAN CHASE BANK, NA and

4    QUALITY LOAN SERVICE CORP.:

5    PLEASE TAKE NOTICE that Plaintiff Mark Morris hereby applies for a Temporary

6    Restraining Order and a Preliminary Injunction enjoining Defendants and their agents, assigns,

7
8    employees, officers, attorneys, agents, and representatives from acting, pending resolution of this

9    action, to deprive Plaintiff of possession or ownership of the real property located at 312 Donahoe

10   Street, East Palo Alto, CA 94303 ("Plaintiff's home"), including without limitation 1) instituting,

11   prosecuting or maintaining foreclosure or sale proceedings; 2) recording any deeds or mortgages

12   regarding Plaintiff's home, 3) otherwise acting to deprive Plaintiff of ownership and control of his

13
14   home, including instigating or participating in the foreclosure sale of Plaintiff's home scheduled

15   for March 2, 2010, or 4) making reports regarding Plaintiff to credit reporting agencies regarding

16   foreclosure.

17   This Application is brought on the ground that without a TRO Plaintiff will suffer

18   irreparable injury, in that his home will be sold and Plaintiff will be homeless, and that as a

19
20   consequence of the foreclosure on his credit record Plaintiff will as a practical matter be unable to

21   purchase another home for the indefinite future.

22   This Application is based on this Notice, the Complaint filed in this action, the attached

23   memorandum of Points and Authorities, the declarations of Mark Morris and Susan Kalra filed

24   herewith and the exhibits attached thereto, and all pleadings on file in this action.

25   Dated: February 25, 2010                    TRIAL & TECHNOLOGY LAW GROUP

26
                                                  By _____
27                                                      Robert A. Spanner

28
_____
Mot For TRO; Mem. in Support  – Case No.              1

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Mark Morris owns a business consulting firm named Small Business Solutions (Morris Decl., ¶2). He refinanced his home in September, 2007 (Morris Decl., ¶3). In the process, he first was hoodwinked by his original mortgage broker, in conjunction with a faithless appraiser, and then swindled by his second mortgage broker.

By this motion Plaintiff seeks a temporary restraining order and preliminary injunction to prevent the sale of his home by non-judicial foreclosure. The sale is scheduled for March 2, 2010. This Court is requested to exercise its equitable powers to prevent such an unjust outcome. Plaintiff can demonstrate a reasonable prospect of prevailing on his Federal Truth-in-Lending and Real Estate Settlement Procedures Act actions. Moreover, Mr. Morris will suffer grievous injury if the sale is not enjoined because the foreclosure will prevent him from qualifying to purchase another home, despite the validity of his claims. By contrast, the bank Defendant – the largest bank in the United States – will suffer nothing if it must wait for resolution of the case to foreclose.

### STATEMENT OF FACTS

Mr. Morris retained Defendants Advantage One Mortgage Co. and Kyle Goehring as his mortgage broker in or about August, 2007 (Morris Decl., ¶4). Mortgage brokers are, of course, fiduciaries. In order to obtain a loan, the property required an appraisal well in excess of $700,000, because Mr. Morris was refinancing over four hundred thousand dollars of debt and there was also a home equity line of three hundred thousand dollars (Morris Decl., ¶4), and banks require a loan-to-value ratio in the neighborhood of at least 70%. They retained Defendants

Mot For TRO; Mem. in Support – Case No.        2

1  Almaden Appraisals and Gregory Walker ("the Appraiser Defendants") to conduct the appraisal.

2  Plaintiff believes that Advantage One and Goehring prevailed on the Appraiser Defendants to

3  inflate the appraisal. The Appraiser Defendants appraised the house as worth one million dollars

4  (Exh. 2 to Morris Decl.), although there was no factual basis for such an appraisal, and Defendant

5  JP Morgan Chase Bank ("Chase") appraised the house as worth half as much less than a year later

6

7  (Exh. 3 to Morris Decl.). The Appraiser Defendants submitted the appraisal to Plaintiff (Morris

8  Decl., ¶5).

9  No loan was consummated with Advantage One. Mr. Morris subsequently was solicited

10  by IQ Home Loans and Realty and Ali Mirzaei (the "IQ Defendants"). The IQ Defendants, to

11  induce Plaintiff to select them as his mortgage broker, represented that they had a "program"

12

13  whereby they could obtain for him an adjustable rate mortgage upon which he would never have

14  to pay a higher adjusted rate because they would refinance his home four times a year without any

15  cost whatever to him because they would pay all closing costs (they even promised he would only

16  have to make nine monthly payments a year) (Morris Decl., ¶6). They also falsified Mr. Morris'

17

18  income by several hundred percent (Morris Decl., ¶7). That is how Mr. Morris came to have the

19  loan at issue here.

20  Washington Mutual Bank, the predecessor of Defendant Chase Bank, violated the Truth in

21  Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA") in the course of

22  the mortgage loan process, and Chase Bank violated California law by failing to timely respond to

23

24  a request for documentation sent to it pursuant to Civil Code §2943.

25                                    **ARGUMENT**

26  **I.    A TEMPORARY RESTRAINING ORDER SHOULD ISSUE.**

27  A plaintiff seeking a TRO or a preliminary injunction "must establish that he is likely to

28

Mot For TRO; Mem. in Support – Case No.          3

1   succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

2   relief, and that the balance of equities tips in his favor, and that an injunction is in the public

3   interest." *Winter v. NRDC*, 129 S.Ct. 365, 374 (2008). All of these factors weigh in favor or

4

5   issuance of a TRO in Plaintiff's favor.

6   ### A.  Plaintiff Is Likely to Succeed on the Merits.

7   Plaintiff's loan is subject to the Federal Truth in Lending Act, 15 U.S.C. § 1601 et seq.,

8   ("TILA") and its implementing regulations, 12 C.F.R. Part 226 ("Reg. Z"). TILA grants a

9   consumer a three-day right to cancel certain types of real estate loan transactions. This three-day

10  right to cancel applies to Plaintiff's loan with Defendants. Pursuant to 15 U.S.C. §1635(a), the

11

12  three-day cancellation period begins upon the latter of the following events: (1) the

13  "consummation of the transaction;" (2) the "delivery of the information and rescission forms"

14  required by that section; or (3) delivery of accurate "material disclosures" required by TILA. . If

15  the required notice of cancellation is not provided, or if the required "material disclosures" are not

16  delivered, then the right to cancel extends to three years after the date of the loan. 15 U.S.C.

17

18  §1635(f). If a consumer has the right to rescind against a creditor, the right will also apply to any

19  assignees of that creditor. 15 U.S.C. § 1641(c).

20  Under settled Ninth Circuit law, the requirement of "likelihood" of success was not

21  intended to erect an insurmountable wall around the availability of preliminary injunctive relief.

22  Certainty of success is not required. *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991)

23

24  (a "fair chance of success"); *Miller v. Cal. Pacific Medical Center*, 19 F.3d 449, 456 (9th Cir.

25  1994); *Johnson v. California State Bd. of Accountancy*, 72 F.3d 1427, 1429 (9th Cir. 1995).

26  "[T]he greater the relative hardship to the moving party, the less probability of success must be

27  shown". *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999). As is

28

Mot For TRO; Mem. in Support · Case No.          4

1    set forth in detail below, likelihood of success on the merits is apparent.

2    **I.    The Truth in Lending Act Is A Strict Liability Statute**

3    The Truth-In Lending Act ("TILA") (15 U.S.C. §1601, *et seq.*) and Regulation Z pursuant

4    thereto (12 C.F.R. §226.1 *et seq.*) contain detailed disclosure requirements for consumer loans. A

5    creditor's violation of TILA or Regulation Z gives the borrower the right to rescind a consumer

6

7    loan secured by the borrower's home. *Semar v. Platte Valley Federal Savings & Loan Assn.*, 791

8    F.2d 699, 703-04 (9th Cir. 1986); *see* 15 U.S.C. §1635(a):

9
10        Except as otherwise provided in this section, in the case of any consumer credit
         transaction (including opening or increasing the credit limit for an open end credit
11        plan) in which a security interest, including any such interest arising by operation
         of law, is or will be retained or acquired in any property which is used as the
12        principal dwelling of the person to whom credit is extended, the obligor shall have
         the right to rescind the transaction until midnight of the third business day
13        following the consummation of the transaction or the delivery of the information
         and rescission forms required under this section together with a statement
14        containing the material disclosures required under this subchapter, whichever is
         later, by notifying the creditor, in accordance with regulations of the Board, of his
15        intention to do so. The creditor shall clearly and conspicuously disclose, in
         accordance with regulations of the Board, to any obligor in a transaction subject to
16        this section the rights of the obligor under this section. The creditor shall also
17        provide, in accordance with regulations of the Board, appropriate forms for the
         obligor to exercise his right to rescind any transaction subject to this section.
18

19   Violations result in "strict liability in the sense that absolute compliance is required and even
20
21   technical violations will form the basis for liability." *Shepeard v. Quality Siding & Window*

22   *Factory, Inc.*, 730 F.Supp. 1295, 1299 (D. Del. 1990). Technical or minor violations of TILA or

23   Regulation Z, as well as major violations, impose liability on the creditor and entitle the borrower

24   to rescind the loan. *Id.; Smith v. Wells Fargo Credit Corp.*, 713 F.Supp. 354, 355 (D. Ariz. 1989).

25   To insure that the consumer is protected, TILA and Regulation Z must be "absolutely complied
26
27   with and strictly enforced." *Semar v. Platte Valley Federal Savings & Loan Assn.*, 791 F.2d at

28
     Mot For TRO; Mem. in Support    Case No.                5

704. TILA's penalties apply regardless of whether the borrower is misled or injured. *Griggs v. Provident Consumer Discount Co.*, 680 F.2d 927, 932-33 (3rd Cir. 1982), *vacated on other grounds*, 459 U.S. 56 (1982); *Huff v. Stewart-Gwinn Furniture Co.*, 713 F.2d 67, 69 (4th Cir. 1983).

2. **The Lender did Not Comply with the Truth in Lending Act.**

Washington Mutual's Notice-of-Rescission form contained multiple violations:

1) Federal regulations require the delivery of two copies of the rescission form (12 CFR §226.23(b)(1); Washington Mutual delivered only one (Morris Decl., ¶8);

2) Federal regulations require that the rescission form identify the transaction (*id.*); Washington Mutual's rescission form did not do so (Exh. 4 to Morris Decl.);

3) Federal regulations require notice of the date the rescission right expires (12 CFR 225.23(b)(1)(v); the rescission form supplied to Plaintiff did not do so (*id.*).

The violation of law is clear on its face; Plaintiff has proved not just likelihood but the inevitability of success on the merits.

3. **The Issue of Tender**

Under Federal regulations, the effect of rescission is clear: the security interest in the property becomes void, then the creditor must tender back payments, then the borrower must tender back the loan proceeds. 15 U.S.C. §1635(b); 12 CFR 226.23(d)(1-3). However, banks frequently argue, notwithstanding what the statutes and regulations say, that the Plaintiff must show he can tender before he can rescind. There are many, many reasons why this is wrong as an issue of law, not least of which is the Federal Reserve's own injunction that on the issue of tender, "Where the consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed before

Mot For TRO; Mem. in Support – Case No.          6

1  establishing the procedures for the parties to tender any money or property." 59 FR 62, p. 16769 at

2  16772 (March 31, 2004). Great deference must be given to the Federal Reserve's interpretation of

3
   TILA. *Ford Motor Credit v. Milhollin,* 444 U.S. 555, 565 (1980); *Anderson Bros Ford v*
4
5  *Valencia,* 452 U.S. 205, 219 (1981).

6      Furthermore, in this case Plaintiff's probable ability to tender is apparent. The fair market

7  value of the house is, by Defendant Chase's own admission, $561,000 (Exh. 3 to Morris Decl.).

8  The amount of the loan is only $417,000 (Exh. 1 to Morris Decl.). Thus, the value of the house

9
   will support a financing,[1] and borrowers must be afforded an adequate opportunity to arrange a
10
11 refinance. *Jones v. Rees-Max LLC,* 514 F.Supp.2d 1139, 1146 (D. Minn. 2007).

12     Nor is a refinancing the only alternative available to Plaintiff. A court has discretion to

13 permit tender by periodic payments. *Avila v. Stearns Lending,* 2008 WL 1378231, *2 (C.D. Cal.,

14 April 7, 2008); *Shepeard v. Quality Sliding & Window Factory,* 730 F.Supp. 1295, 1308 (D. Del.

15 1990).

16
       A TRO proceeding is simply not the place to try the issue of tender, in a void and without
17
18 any opportunity for any party to engage in discovery, Proof of Plaintiff's ability to tender is simply

19 not a precondition to rescission. *Harrington v. Home Capital Funding, Inc.,* 2009 WL 514254, *3

20 (S.D.Cal. 2009); *Horton v. California Credit Corp.,* 2009 WL 2488031, *8-9 (S.D.Cal. 2009).

21 Indeed, it is the *lender's* obligation in the first instance to prove *inability* to tender. *Johnson v.*

22
   *Chase Manhattan Bank,* 2007 WL 2033833, *5 (E.D. Pa., July 11, 2007).
23
24     At this stage of the proceedings, the issue of tender is not an impediment to the issuance

25
   [1] While there is a second mortgage on the house of about three hundred thousand
26 dollars, it is held by Chase as well; and Chase certainly should not be allowed to refuse to
   subordinate its second mortgage to a new financing in order to defeat Plaintiff's ability to
27 tender. Nor is that outcome likely; one must presume that Chase would be delighted to
28 receive $417,000 in proceeds out of this particular dwelling.

Mot For TRO; Mem. in Support    Case No. _____         7

1  of a temporary restraining order.

2      **4.    JP Morgan Chase Violated State Law.**

3  On January 25, 2010, Plaintiff sent a letter to JP Morgan Chase requesting, among other
4
   things, a payoff demand statement and "a true, correct, and complete copy of the note or other
5
6  evidence of indebtedness with any modification thereto" pursuant to Civ. Code §2943 (Exh. 5 to
7  Kalra Decl.).

8  A beneficiary receiving such a request must provide the requested information within 21
9  days of receipt of the request. Civ. Code §2943(b)(1) and (c)(1). Chase failed to respond to the
10
   letter (Kalra Decl., ¶2).
11

12  JP Morgan Chase's failure to respond to Plaintiff's Civ. Code §2943 request constitutes a
13  violation of that statute; Plaintiff has proved likelihood of success on the merits of his claim for
14  that violation.

15      **B.    Plaintiff Will Suffer Irreparable Harm In the Absence of Preliminary Relief.**
16
   Irreparable harm to Plaintiff is manifest: without a TRO he will lose his home to
17
18  foreclosure. There is no replacement for one's home, and its loss is irreparable injury *per se*. *See*
19  *Wrobel v. S.L. Pope & Associates*, 2007 WL 2345036, *1 (S.D.Cal. 2007) ("losing one's home
20  through foreclosure is an irreparable injury"; *Avila v. Stearns Lending*, 2008 WL 1378231, *3
21  (C.D. Cal., April 7, 2008). Preliminary injunctive relief is also available to preserve property as to
22  which the parties have conflicting claims (as is true here). *Deckert v. Independence Shares Corp.*,
23
24  311 U.S. 282, 290 (1940). Finally, the rationale for the grant of preliminary injunctive relief is to
25  protect a court's power to grant the final relief requested, *United States ex rel. Rahman v.*
26  *Oncology Assocs.*, 198 F.3d 489, 501 (4th Cir. 1999), which purpose would be utterly frustrated
27  by sale of Plaintiff's home, which would terminate Plaintiff's right of rescission. 12 C.F.R.
28

Mot for TRO; Mem. in Support – Case No.        8

1  §226.23(a)(3).

2  **C.    The Balance of Equities is Heavily in Plaintiff's Favor.**

3
4      The irreparable injury here is aggravated by the fact that without somewhere to go,
5  Plaintiff will become homeless for an indefinite but extended period of time. Compared to the
6  minor inconvenience of Defendants having to wait until determination of a preliminary injunction
7  hearing before foreclosing, the balancing of harms tips precipitously to one side. The suffering
8  that will be inflicted on the Plaintiff is enough, by itself, to warrant granting this motion for a
9  temporary restraining order. The only interest the Defendant financial institutions have in seeing
10
11  the foreclosure proceed as scheduled is convenience, so they will not have to reschedule the
12  trustee's sale. If relief is ultimately denied by this Court, Defendants will be secured by Plaintiff's
13  house to the same extent as they are today. In short, Defendants have *no* cognizable interest in
14  immediate foreclosure on the property. Under such circumstances, even "a plaintiff who does not
15  have a very high probability of ultimately prevailing will be entitled to preliminary relief if he
16  faces very great irreparable harm and the defendant very little". *Ayres v. City of Chicago*, 125
17
18  F.3d 1010, 1013 (7th Cir. 1997).

19  **D.    An Injunction Is In the Public Interest.**

20      It is ignominious to allow Plaintiff to be duped into accepting a negatively amortizing loan
21  the payments for which increased over time to several hundred percent of his total income, and
22  then to allow him to be thrown out on the street because he can't make those payments. Such a
23
24  manifest injustice puts the financial system and the judicial system in question. It is in the public
25  interest that such a grievous injury not be allowed to be inflicted on consumers.

26      Thus, all of the factors governing the granting of a TRO are in Plaintiff's favor.

27

28

Mot For TRO; Mem. in Support – Case No.            9

## II.    PLAINTIFF SHOULD NOT BE REQUIRED TO POST SECURITY.

Under F.R.Civ.P. Rule 65(c), a court has the authority to waive the requirement of a bond. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996); *BellSouth Telecommunications, Inc. v. MCImetro Access Transmission Services, LLC*, 425 F.3d 964, 971 (11th Cir. 2005). One of the circumstances in which a bond may be waived is where – as here – the applicant is of limited means. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999); *Orantes-Hernandez v. Smith*, 541 F.Supp.351, 385 n. 42 (C.D.Cal. 1982).

The second circumstance in which waiver of a bond is warranted is where there is no likelihood of harm to the defendants. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999). Here, there is no possibility of harm to the Defendants if their foreclosure sale is postponed; they will continue to hold the same security in the property that they now hold.

Third, a bond may be waived where the overwhelming balance of hardships weighs in favor of the party seeking injunctive relief. *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3rd Cir. 1996). That is true here; Defendants will suffer no hardship if they are required to postpone the trustee's sale.

Fourth, a bond may be dispensed with where the applicant has shown a strong likelihood of success on the merits. *Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972). Success on the merits is likely, as the foregoing evidence demonstrates. Since all of these factors fall in Plaintiff's favor, a bond should be dispensed with in this case.

Dated: February 25, 2010

Respectfully submitted,
TRIAL & TECHNOLOGY LAW GROUP
A Professional Corporation

Robert A. Spanner

Mot. For TRO; Mem. in Support  - Case No.                    10